IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| BRIAN K. COOPER, | ) | Civil Action No. 3:06-1270-CMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FLYING J TRAVEL PLAZA, INC., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

Plaintiff, Brian K. Cooper ("Cooper") filed this action on April 28, 2006. He alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.[1] Defendant, Flying J Travel Plaza, Inc. ("Flying J") filed a motion for summary judgment on March 29, 2007. Because Cooper is proceeding pro se, he was advised on April 3, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment could result in the dismissal of his complaint. Cooper filed a memorandum in opposition to summary judgment on May 30, 2007. Flying J filed a reply on May 14, 2007, and Cooper filed a sur-reply on May 30, 2007.

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e) and (g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

## RULE 56(F) MOTION/DISCOVERY ISSUES

In his opposition memorandum, Cooper appears to argue that summary judgment should be denied under Federal Rule 56(f) because he has not been able to obtain affidavits he needs to prosecute his claims.  Federal Rule 56(f) provides:

> When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Flying J contends that Plaintiff has failed to identify why he could not present an affidavit and that Plaintiff failed to timely participate in discovery.

To the extent that Plaintiff is arguing that summary judgment be denied or that a continuance be granted under Rule 56(f), his request should be denied.  He fails to identify why he could not present the affidavit(s) he claims are necessary.  Discovery ended in this action on March 1, 2007. See Amended Scheduling Order dated October 10, 2006.  Flying J provides that Cooper failed to propound any written discovery or request any depositions during that time and did not serve his first set of requests for production until April 2, 2007, one month after discovery ended and four days after Flying J filed its motion for summary judgment.  Even though the discovery requests were untimely, Flying J provided responses and objections to Cooper.  Defendant's Reply at 2.  To the extent Cooper is now attempting to compel discovery responses, his motion is untimely.  Motions to compel must be filed within twenty days of the discovery response or, if no response is given, within twenty days after the response was due.  See Local Rule 37.01, D.S.C.  Further, Cooper has not provided the required supporting documentation for a motion to compel.  The Local Rules

require that "[t]he relevant discovery requests and responses, if any, shall be filed as supporting documentation."  Local Rule 37.01(B), DSC.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party.  Id.  Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues.  Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005  (4th Cir.), cert. denied, 484 U.S. 897 (1987).  This does not mean that summary judgment is never appropriate in these cases.  To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."  Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial."  Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989). Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

FACTS

1.   Flying J owns and operates travel plazas comprised of fuel stations, convenience stores, restaurants, and/or lodging and other services for commercial and other travelers throughout the United States.

2.   Cooper is an African-American male.

3.   Dale Clift ("Clift"), a white male, was a district manager whose district included Columbia, South Carolina. Clift offered Cooper a manager in training position in 1999, but Cooper rejected the offer because he thought that the offered salary ($42,000) was too low. Cooper Dep. 80-81, Complaint, Para. 7.

4.   Cooper began working for Flying J in December of 2001 in Blacksburg, South Carolina as a manager in training. Clift hired him at a starting salary of $45,000. Chris Andrews

4

("Andrews"), a white male, was also in training at the Blacksburg site.   See Cooper Dep. 10-11; Complaint Paras. 8-10.

5.    Cooper acknowledges that at the beginning of his employment with Flying J, he received, read, and understood the employee handbook, including Flying J's policy against discrimination and harassment.   Cooper Dep. 89-90, Exs. A and B; Jerry Beckman ("Beckman") Decl.,[2] Exs. 1 and 2.

6.    Flying J's discrimination and harassment policy prohibits sexual harassment and other verbal and physical behavior in the workplace of a sexual nature, or conduct that is lewd, suggestive, or offensive.  See Beckman Decl., Ex. 2.

7.    After completing his management training at Flying J, Cooper became a general manager in March 2002.  In approximately June 2002, he was assigned to the Columbia, South Carolina travel plaza.  In June of 2002, Clift increased Cooper's annual salary to $46,500. Cooper Dep. 99-102; Beckman Decl., Exs. 4 and 5.

8.    As a general manager, Cooper was responsible for understanding, following, and implementing the policy against discrimination and harassment, and communicating it to employees at travel plaza meetings.  Cooper also signed a Commitment to Respect for Employees ("Commitment to Respect") at the beginning of his employment, reflecting his agreement to foster a work environment free of harassment and to respect and value each person with whom he would work.  Cooper Dep. 90-97, Ex. C; Beckman Decl., Ex 3.

---

[2]Beckman is the Director of Human Resources for Flying J.  Beckman Decl., Para. 2.

9.      In March of 2003, Carolyn Sirk ("Sirk"), a female employee of Flying J, complained to Clift that Cooper engaged in harassment and other inappropriate behavior at work.[3]

10.     Clift investigated Sirk's complaint and requested a response from Cooper. He also informed Cooper that retaliation was prohibited and requested that Cooper reconfirm his Commitment to Respect. Cooper admitted that he told Sirk to "come up here, use our showers, [and] wash your butt" when Sirk called in to report that she could not come to work because her water pump at home had broken. As a result, Clift required Cooper to sign another Commitment to Respect, reviewed the company's policy against discrimination and harassment with Cooper again, and issued him a notice of employee counseling. The notice of employee counseling indicated that Cooper violated the policy against harassment and the Commitment to Respect. Cooper Dep. 105-106, 108, 110-115, Exs. I and J; Beckman Decl., Exs. 8-10.

11.     Cooper wanted to relocate to a store in the Rock Hill, South Carolina/Charlotte, North Carolina area. He claims that he was told by Clift that he (Cooper) would have to find a replacement for himself before being transferred. Cooper interviewed Michael Hicks ("Hicks"), a white male. In approximately June 2003, Hicks was hired by Clift at a salary of $57,500. See Complaint, Paras. 14-15; Plaintiff's Sur-Reply, Ex. 10.

---

[3]Sirk alleged that Cooper (1) told her that she should "wash her butt and get it really clean;" (2) had relationships with cashiers (which would be a violation of Flying J's policy); (3) made comments to a cashier about the size or movement of her chest as she was walking down the stairs; (4) made joking comments about panty lines; and (5) reportedly kissed a former employee up and down her arm. See Cooper Dep. 104-105.

12.     In September of 2003, a little more than a year after Cooper's first salary increase, he was given a four percent raise, increasing his annual salary to $48,360. Cooper Dep. 115-116, Ex. K; Beckman Decl., Ex. 11.

13.     In approximately October 2004, Cooper brought his ten-year old daughter with him to work and allowed her to operate a cash register at Flying J. Clift recommended that Cooper be discharged for this infraction. Cooper Dep. 116-118.

14.     Cooper complained to Flying J that discharge was an unfair result of the infraction. A conference was held on October 7, 2004, with Cooper, Clift, Lavon Lamy (the District Accounting Manager), and Rob Paullin (another Flying J employee). Cooper was allowed to return to work with full pay after being informed of Flying J's policy regarding family members at work. He was warned that he would be discharged for any future infraction of that nature. At the meeting, Cooper also raised questions about his own concerns including those about salaries, his problems with his assistant manager (Terry Smoot), and a writeup Cooper received for using a company truck. Cooper Dep. 126-133, 142, Ex. L; Beckman Decl., Ex. 12.

15.     In approximately December of 2004, Clift left Flying J and Robert Clark ("Clark") became the new district manager to whom Plaintiff reported. Cooper Dep. 136.

16.     In the Spring of 2005,[4] Clark received several complaints of sexual harassment regarding Cooper and requested that Cooper respond to the complaints. Cooper Dep. 147. Specifically, the complaints were that Cooper: (1) made comments regarding the figures,

---

    [4]Flying J provides that page 147, line 2, of Cooper's deposition erroneously refers to the year 2003 instead of 2005 with respect to these complaints, but it is clear from the face of the deposition and from the exhibits thereto that these complaints occurred in 2005, after Clark became district manager. See Cooper Dep. 136, Exs. M and N.

pants, and underwear (specifically thong underwear) of female employees; (2) made

comments regarding female employees' body parts, including references to their breasts and

butts, stated "move your dogs" which the female employees thought was in reference to

females' breasts, and stated that if female employees ate too much it would "go straight to

their butts;" (3) stated "I'm part Indian; I belong to the slap-a-hoe [sic] tribe;" (4) referred

to employees as rats and told them to "call 1-800 EAT-CHEESE;" (5) repeatedly asked

female employees for their telephone numbers; (6) requested and discussed specific acts,

such as requesting that a female employee allow him to "lick her p[*]ssy" or "hit it"

(referring to sexual intercourse); (7) stated to employees "who do you think management

will believe...a person who makes the company 100s of dollars (referring to employees) or

a person who makes the company 1000s of dollars?" (referring to the general manager);

(8) touched female employees in an inappropriate manner, such as on their breasts and butts,

and intentionally rubbed against them with his penis; and (9) exposed himself to female

employees by showing them his penis.  Cooper Dep. 147-150, Ex. M; Beckman Decl., Ex.

13.

17.     The three employees who complained about Cooper are African-American females.  Cooper

Dep. 153-159.

18.     Clark also asked Cooper whether, after the investigation was initiated, he had violated

Clark's instruction not to discuss it with other employees.  Cooper Dep., Ex. M.

19.     Cooper submitted a written response, in which he admitted (1) making a comment to another

employee about thong underwear; (2) referring to "dogs," but meaning feet rather than

breasts; (3) joking about food going to a person's butt; (4) saying he is a member of the

Indian "slap-a-ho" tribe in reference to a joke he heard on television and meaning (in a

8

joking way) that would happen if bad behavior continued; (5) referring to employees as rats and telling them to call 1-800-EAT-CHEESE if they had problems; and (6) answering an employee's question about the investigation. Cooper denied the other allegations. Cooper Dep. 153-159; Beckman Decl., Ex. 13.

20.     Flying J discharged Cooper on March 2, 2005. The employment notice provided that Cooper was terminated for violating Flying J's discrimination and harassment policy with sexual harassment and threatening remarks. Cooper Dep. 151-152, Ex. O; Beckman Decl., Ex. 14.

21.     Cooper filed a Charge of Discrimination with the South Carolina Human Affairs Commission ("SCHAC") on May 16, 2005, alleging March 1, 2005 as the latest date the alleged discrimination occurred. Cooper Dep. 165, Ex. Q. SCHAC issued a Notice of Right to Sue on December 14, 2005. Cooper Dep. 187, Ex. R.

## MOTION FOR SUMMARY JUDGMENT

Cooper alleges that he was subjected to disparate treatment based on his race in violation of Title VII and § 1981;[5] subjected to disparate treatment based on his age in violation of the ADEA, and subjected to retaliation in violation of Title VII, § 1981, and the ADEA. He also appears to assert a claim for harassment. Flying J contends that it is entitled to summary judgment because: (1) Cooper failed to timely file or to exhaust administrative remedies regarding his ADEA claims; (2) Cooper failed to allege any facts that would rise to the level of unlawful racial harassment; (3) he cannot offer any evidence that he was treated less favorably than a similarly situated employee

---

[5]The standard for establishing claims of employment discrimination under either Title VII or §1981 is the same. See Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1285-86 (4th Cir.1985).

9

outside his protected class with respect to the terms and conditions of his employment; (4) Flying J has presented legitimate, nondiscriminatory, and non-retaliatory reasons for its decisions regarding the terms and conditions of Plaintiff's employment; and (5) Cooper cannot offer any evidence that the reasons presented by Flying J for its decisions are a pretext for unlawful race discrimination or retaliation.[6]

    A.    <u>ADEA</u>

Cooper alleges that he was subjected to disparate treatment based on his age and that he was retaliated against for complaining about age discrimination. Flying J contends that it is entitled to summary judgment as to Cooper's ADEA claim because he failed to exhaust his available administrative remedies. Additionally Flying J contends that Cooper could not offer any facts to support an age discrimination claim even if he had timely asserted one because his allegations concern actions by Cooper's former supervisor Clift, who Cooper concedes is nearly ten years older than Cooper. Cooper Dep. 7, 80.

The ADEA provides:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed–

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

---

[6]In its motion for summary judgment, Flying J includes information concerning alleged incidents of harassment by Cooper in his jobs prior to and after his employment with Flying J. In his opposition memoranda, Cooper attempts to refute some of this information. For purposes of summary judgment, the undersigned has only considered evidence as to Cooper's alleged conduct during the time he was employed with Flying J.

Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

29 U.S.C. § 626(d).  The filing of "a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982).  Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly.  See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

Cooper claims that he thought he timely exhausted his administrative remedies, but has provided no evidence to show this.  He has not plead equitable tolling, waiver, or equitable estoppel, and has not shown that they should be applied.  "Equitable tolling applies where the defendant has wrongfully deceived or mislead the plaintiff in order to conceal the existence of a cause of action."  English v. Pabst Brewing Co., 828 F.2d 1047 (4th Cir. 1987), cert. denied, 486 U.S. 1044 (1988). "To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge."  Id.  Cooper has not shown that he was wrongly deceived or mislead by Flying J as to his cause of action.

"Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." English,  Cooper has not shown any intentional misconduct or deliberate action by Flying J to cause Cooper to miss the SCHAC or EEOC filing deadline.

11

Even if Cooper could show a basis for waiver, equitable tolling, or equitable estoppel, he has not shown that he filed any EEOC charge as to his ADEA claim. More than 300 days have passed since the time of the alleged incident(s). Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of an ADEA action. See Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990) (Title VII); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 753 (ADEA); see also Moche v. City University of New York, 781 F. Supp. 160 (E.D.N.Y. 1992)(granting summary judgment because of plaintiff's failure to pursue the administrative procedures); Watson v. Republic Airlines, Inc., 553 F. Supp. 939 (N.D.Ga. 1982)(dismissing action where the plaintiff failed to file a charge with the EEOC as it was a condition precedent to filing a lawsuit in federal court).

B.    Disparate Treatment

Cooper alleges that he was subjected to disparate treatment based on his race.[7] Flying J contends that it is entitled to summary judgment as to Plaintiff's disparate treatment claims because Cooper cannot offer any evidence of unlawful discrimination or that Flying J's legitimate, nondiscriminatory reasons for its decisions are pretext for unlawful treatment.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined

---

[7]Cooper may also be attempting to assert that he was subjected to disparate treatment based on his age. As discussed above, however, he fails to show that he has exhausted his available administrative remedies as to age discrimination claims. Further, he has offered no evidence to show that he was discriminated against based on his age.

in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

> (1)     he is a member of a protected class;
>
> (2)     he was qualified for his job and his job performance was satisfactory;
>
> (3)     he was subjected to an adverse employment action; and
>
> (4)     the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

See <u>Gairola v. Commonwealth of Virginia Dep't of General Serv.</u>, 753 F.2d 1281, 1286 (4th Cir.1985); <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1383 (4th Cir.), <u>cert. denied</u>, 516 U.S. 870 (1995); <u>McDonnell Douglas</u>, 411 U.S. at 802.[8]  <u>McDonnell Douglas</u> provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination.  <u>Id.</u> at 804; <u>see also</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000).

---

[8]Cooper may be claiming that he was subjected to disparate discipline.  A plaintiff can establish a prima facie case of disparate discipline by offering proof that:
> (1)  he is a member of a protected class under Title VII;
> (2) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and
> (3) he suffered more severe discipline for his misconduct as compared to those employees outside the protected class.

See <u>Cook v. CSX Transp. Corp.</u>, 988 F.2d 507, 511 (4th Cir. 1993); <u>Moore v. City of Charlotte</u>, 754 F.2d 1100, 1105-06 (4th Cir.), <u>cert. denied</u>, 472 U.S. 1021 (1985).

(1)    <u>Hiring Salary</u>

Cooper alleges that Flying J discriminated against him based on the salary ($45,000) at which he was hired.[9]  He claims that Andrews was hired at the same amount or more,[10] but was less qualified than he was to perform the job of general manager.  Cooper also claims that Hicks was later hired at a salary ($57,500) much higher than his.

Flying J has articulated a legitimate, non-discriminatory reason for the amount of Cooper's 2001 salary offer, that the company customarily offers new employees the same amount as they are making at their most recent comparable job.  Cooper attempts to refute this based on his salary ($76,000 including bonuses) at a previous job he held with Pilot Oil.  He, however, held two jobs after the time his employment with Pilot ended in February 1999.  Cooper testified that he was making $45,000 at his job immediately prior to his starting with Flying J.  That job was as a general manager for Wilco Travel Plaza.  Cooper Dep. 69-71.  The "salary review" produced by Cooper also confirms this.  Plaintiff's Sur-Reply, Ex. 2; <u>see</u> <u>also</u> Ex. 9.  Cooper also attempts to show pretext by arguing that Andrews did not have the same education (college degree) and work experience (travel plaza) that he had and that Hicks's experience in management of "big-box" stores (referring to stores like K-Mart and Wal-Mart) did not justify Hick's higher salary.[11]  He has, not, however, shown that

---

[9]Cooper may also be attempting to claim that the $42,000 offer he received, but did not accept, in 1999 was discriminatory.  He has not, however, identified any similarly-situated employees outside the protected class who were offered more money during that time period.  Further, he has not shown that he exhausted his administrative remedies as to such a claim.  Cooper's charge of discrimination only alleges harm from December 2001 to March 2005.  Cooper Dep., Ex. Q.

[10]In his Complaint, Cooper alleges that Andrews was hired at the same salary, but claims in his sur-reply that Andrews was hired at a salary of $46,000.  <u>See</u> Complaint; Para. 10; Plaintiff's Sur-Reply at 3.

[11]Cooper also claims that Hicks should have been paid less because an African-American general manager for Flying J, John Howard, was paid less than Hicks even though Howard also had "big
(continued...)

these employees were not qualified for the positions or that they did not earn the amounts offered by Flying J at their immediate previous jobs.[12]

    (2)    Placement Bonus/Raises

        Cooper appears to allege that Flying J discriminated against him by paying Andrews a placement bonus of $4,000 (after Andrews finished training and was transferred to a different store), but failing to pay him such a bonus. He may also be attempting to allege that he did not receive the same raises at later dates that Andrews received. Flying J contends that Cooper failed to exhaust his administrative remedies as to such a claim and that he fails to show that he and Andrews were similarly situated.

        Cooper fails to show that he exhausted his administrative remedies as to a placement bonus or raises. More than 300 days have passed since the alleged acts. "The EEOC charging period is triggered when a discrete unlawful practice takes place." Ledbetter v. Goodyear Tire & Rubber Co., Inc., __ U.S. __, 127 S.Ct. 262, 269 (2007). Even if he exhausted his administrative remedies, Cooper has not shown that he was similarly situated to Andrews for the purposes of a placement bonus or raises. Flying J provides that placement bonuses are not automatic. Defendant's Motion for Summary Judgment at 18. Cooper admits that Hicks did not receive a placement bonus. Cooper

---

[11](...continued)
box" experience. Clift, however, testified that Hicks was a general manager of a "big box" store (managed the whole store) while Howard had only managed a department within such a store. Clift Dep. 32, 42. Cooper also has not offered any information to show that Howard was not offered a similar salary to what Howard made at the "big box" store.

[12]"It is the employer's prerogative...not the applicant's, to establish what criteria are relevant to the hiring decision...The employee does not get to write his own job description. An employer can set whatever performance standards he wants provided they are not a mask for discrimination or on forbidden grounds such as race or age." Smith v. American Nat'l Red Cross, 980 F.2d 727, 1992 WL 357850, at *3 (4th Cir. Dec. 4, 1992)(unpublished)(quoting Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1571 (7th Cir. 1989).

3:06-cv-01270-CMC    Date Filed 10/19/07    Entry Number 48    Page 16 of 22

Dep. 175.  As to raises, Cooper fails to show that he was similarly situated to Andrews because he has not shown that their performances were comparable or that Andrews was ever reprimanded, much less for violating the Flying J's harassment policy.

                (3)     Reprimand for Use of Company Truck

            Cooper alleges that it was discriminatory for Flying J to reprimand him for using a company truck.  He fails to establish a prima facie case as to this claim, however, because he concedes that a white employee was actually fired for a similar violation.  See Cooper Dep. 176-177.  Cooper later attempts to argue that the other employee was terminated for not paying the fuel he used in the truck and not for using the truck.  See Cooper Dep. 176-177.  He admitted, however, that Clift told him that the other employee was fired for using the company truck and Cooper has not provided anything other than his own speculation to dispute this.  See Cooper Dep. 176-177.  Further, Cooper simply has not shown that an employee outside the protected class who used a company truck was disciplined less severely than he was for using a company truck.

                (4)     Termination for Allowing Daughter to Operate Cash Register

            Cooper alleges that Flying J discriminated against him by terminating him for allowing his ten-year old daughter to operate a cash register at the Columbia travel plaza.  He claims that another employee was not disciplined for bringing her daughters to work and another employee was not disciplined for allowing his wife to help him a full day, including working on computers, doing schematics, and printing labels.  Flying J appears to contend that Cooper fails to establish that he was subjected to an adverse employment action because his termination was rescinded.

            Cooper fails to establish a prima facie case as to this incident because the preliminary decision to terminate him was later changed, such that he has not shown that he was subjected to an

16

adverse employment action.[13]  Further, he fails to show that any employee outside the protected class was similarly situated.[14]  One employee brought his wife, not his underaged daughter, to work, but there is no indication that the wife operated a cash register.  Another employee brought her daughters to the workplace, but there is no indication that the daughters ever operated a cash register at a Flying J site.

Even if he could establish a prima facie case, Flying J has articulated a legitimate, nondiscriminatory reason for its actions, that Cooper was subject to termination because he allowed his ten year old daughter to work a cash register at the travel plaza.  Cooper does not deny that this occurred, provide any evidence of pretext, or show that he was disciplined based on his race.

(5)     Termination for Harassment

Cooper alleges that Flying J discriminated against him for terminating him for harassment.  He fails, however, to establish a prima facie case, as he has not identified any similarly situated employee outside the protected class who remained employed after engaging in similar conduct.

Even if Cooper can establish a prima facie case, Flying J has offered a legitimate, non-discriminatory reason for Cooper's termination, that Cooper violated Flying J's harassment policy.  Although he disputes some of the conduct for which he was terminated, Cooper does not dispute that he made a comment to an employee about thong underwear, joked about food going to

---

[13]Cooper admits he received pay for the time he was off work prior to his reinstatement.  Cooper Dep. 133.

[14]If this is analyzed as a disparate discipline action, he fails to show that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class and he suffered more severe discipline for his misconduct as compared to those employees outside the protected class.

an employee's butt, told the "slap-a-ho" joke, and answered an employee's question about the ongoing investigation after being instructed not to do so.  He has not disputed that these female employees complained of his behavior or shown that Flying J was discriminatory in terminating him after they complained.  Cooper was also previously reprimanded for violating the harassment policy based on conduct reported in March 2003 by Sirk.  Cooper has not shown that Flying J's legitimate, non-discriminatory reason is false or that his termination was based on his race.

C.     Harassment

Cooper appears to allege that he was subjected to harassment because, when Cooper was placed in the Columbia location as general manager, the former general manager, Terry Smoot ("Smoot") was demoted to assistant manager and remained at the Columbia location.  He claims Smoot told crew members that Cooper was only there to get the heat off Clift for poor performance and Smoot would become general manager again after Cooper failed in his job. Cooper claims that he complained to Clift who promised to talk to the crew members, but never did.  Complaint, Para. 13.  Flying J contends that Plaintiff fails to allege any facts that rise to the level of unlawful racial harassment.

To prevail on a Title VII hostile environment claim based on race, a plaintiff is required to present evidence establishing that "(1) the subject conduct was unwelcome; (2) it was based on the [race] of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 710 (4th Cir.1995) (en banc); see also Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

Cooper fails to establish a claim for racial harassment.  Cooper concedes that neither Smoot

(who is African-American) nor Clift made any racial comments or referred to his race in any way.[15] Cooper Dep. 170-172.  Further, he fails to show that Smoot's acts of insubordination or Clift's manner of dealing (or not dealing) with Cooper's complaints were based on his race.

     D.    <u>Retaliation</u>

       Cooper alleges retaliation under Title VII, § 1981, and the ADEA.  Flying J contends that it is entitled to summary judgment on this claim because Cooper has not presented any evidence that he engaged in any protected activity and even if Cooper could establish a prima facie case of retaliation, it has articulated a legitimate, nondiscriminatory reason for its actions that Cooper fails to show is pretext for unlawful retaliation.

       To establish a prima facie case of retaliation under Title VII, an employee must demonstrate that:

    1)    the employee engaged in protected activity;[16]

    2)    the employer took some adverse employment action against the employee; and

    3)    a causal connection existed between the protected activity and the adverse action.

See <u>Haulbrook v. Michelin North America, Inc.</u>, 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); <u>Causey v. Balog</u>, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); <u>Carter v. Ball</u>, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII).  If the plaintiff establishes a prima facie case, the burden shifts to the

---

[15]As noted above, Cooper fails to establish that he exhausted his administrative remedies as to any claims of harassment based on his age.  Further, he fails to allege that any harassing conduct or comments were based on his age.

[16]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity.  Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity.  <u>Warren v. Halstead Indus., Inc.</u>, 802 F.2d 746, <u>cert. denied</u>, 487 U.S. 1218 (1988) and <u>Mitchell v. Baldrige</u>, 759 F.2d 80 (D.C. Cir. 1985).

defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Cooper appears to allege that he engaged in protected activity at the October 2004 meeting by complaining about his starting salary and raises, the alleged insubordinate conduct of Smoot, and disciplinary actions. The only alleged adverse employment action after that time is his termination. Assuming Cooper's comments were protected activity and there is a causal connection between the protected activity and his termination, Cooper's claim fails because Flying J has articulated a legitimate, nondiscriminatory reason for Cooper's termination. As discussed above, Flying J has articulated that Cooper was terminated for violating its harassment policy. Cooper fails to show pretext.

## MOTION TO STRIKE

On June 4, 2007, Flying J filed a motion to strike Cooper's sur-reply. Flying J contends that the sur-reply should be stricken because the Federal Rules of Civil Procedure do not permit a sur-reply and even if Cooper's pleading is construed as a reply it is untimely pursuant to Local Rule 7.07, DSC. Cooper contends that the motion to strike should be denied because Flying J's reply memorandum contains "new claims" and "false information."

The undersigned has considered Cooper's sur-reply in preparing this report and recommendation. If this report and recommendation is adopted, it is recommended that Flying J's

motion to strike be denied as moot.  Alternatively, it is recommended that the motion to strike be granted as Cooper's sur-reply is untimely.[17]

CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 27) be granted.  It is also recommended that Defendant's motion to strike (Doc. 38) be denied as moot.

Respectfully submitted,

s/Joseph R. McCrory
United States Magistrate Judge

October 19, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[17]Local Rule 7.07 provides:
> Replies.  Replies to responses are discouraged.  However a party desiring to reply to matters raised initially in a response to a motion or in accompanying supporting documents shall file the reply within five (5) days after the service of the response, unless otherwise ordered by the Court.

Local Rule 7.07, DSC.  Flying J's reply was filed on May 14, 2007.  Cooper did not file his sur-reply until May 30, 3007.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).